# MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Jun 21 2017, 8:29 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Richard J. Thonert
Fort Wayne, Indiana

## IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| In the Matter of the Paternity of T.A., Minor Child | June 21, 2017 |
| | Court of Appeals Case No. 01A02-1611-JP-2729 |
| By Next Friend, C.B., *Petitioner,* | Appeal from the Adams Circuit Court |
| v. | The Honorable Chad E. Kukelhan, Judge |
| L.A., *Respondent* | Trial Court Cause No. 01C01-1503-JP-11 |

**Altice, Judge.**

## Case Summary

[1]   C.B. (Mother) appeals from the trial court's order granting L.A.'s (Father) Motion for Modification of Child Custody. Mother argues that the trial court abused its discretion in granting Father sole custody of T.A., the parties' minor child (Child), and in restricting her parenting time.

[2]   We affirm in part, reverse in part, and remand with instructions.

## Facts & Procedural History

[3]   Child was born in September 2012. Mother and Father were never married, but Father signed a paternity affidavit establishing his paternity the day after Child's birth. Mother and Father's relationship ended sometime in 2013. Thereafter, Child resided with Mother and his nine-year-old half-sister in Berne, Indiana. Mother and Father voluntarily shared equal parenting time of Child and their arrangement worked "fairly well." *Transcript* at 6. Mother eventually obtained employment in Decatur and arranged for Child to attend daycare nearby.

[4]   In May 2014, Mother met D.B. D.B. informed Mother that he was on probation after having served time in the Department of Correction for a Class C felony child molesting conviction.[1] D.B. explained the circumstances giving rise to his conviction, admitting that when he was twenty-one, he and an

---

[1] D.B. pleaded guilty.

underage girl engaged in oral sex outside a bowling alley.[2] He claimed that he thought the girl was sixteen, but that she in fact was only thirteen.

[5] Over the next six months, Mother and D.B. became better acquainted and eventually started dating. D.B. successfully completed his probation, finished his counseling, and passed a polygraph and other examinations administered by a mental health professional. Thereafter, the Adams Superior Court granted him permission to be in the presence of Mother's three children. Father was not privy to D.B.'s request for permission to be around Child. D.B.'s probation officer and a mental health counselor both approved of the terms of a safety plan for D.B. to follow when in the presence of Mother's children.

[6] Father and Mother negotiated a Stipulation and Agreed Order (Custody Order) regarding custody and parenting time for Child. Father had met D.B. prior to submitting the Custody Order to the trial court, but Mother had not informed Father of D.B.'s criminal past. The trial court accepted the Custody Order submitted by Mother and Father on July 28, 2015. Paragraph 7 provided:

> It is agreed that both parties are fit and proper persons to have the primary physical custody of the minor child and, as such, Father and Mother shall have joint legal and equally shared physical custody of the parties' minor child. For purposes of the holiday schedule in the Indiana Parenting Time Guidelines only, Mother

[2] D.B. testified that he was required to register as a non-violent sex offender for a period of ten years, ending on May 16, 2024. He further testified that his mental health counselor put together a safety plan that included restrictions on where he could live and his interactions with children. The safety plan also provided that overnight visits with children were prohibited unless approved by the court. D.B.'s probation officer approved of the safety plan.

shall be deemed the custodial parent. Father and Mother shall have parenting at all reasonable times agreed upon by the parties. However, if the parties cannot agree, then parenting time shall go to a two week schedule where Mother has the child Monday, Tuesday, and Wednesday, Father on Thursday and Friday, and Mother on Saturday and Sunday for week one. Week two shall see Father having custody Monday, Tuesday, and Wednesday, Mother on Thursday and Friday, and Father on Saturday and Sunday, with exchanges taking place at 7:00 p.m. at the McDonalds in Berne, Indiana or other place as the parties may agree.

*Appellant's Appendix Vol. 2* at 29. Mother and Father further agreed:

The parties agree that no modification of this joint legal custody agreement of the parties shall be made except upon a showing of substantial change in circumstances of the statutory considerations so as to make the existing joint legal custody order of this Court not in the best interests of the child. The parties agree that the remarriage of either party is not sufficient ground to satisfy the substantial change of circumstances standard for the purposes of modifying the joint legal custody arrangement.

*Id*. at 31.

[7] Mother and D.B. eventually married on June 10, 2016. Mother planned to move with Child into D.B.'s home in Fort Wayne on August 1, 2016. Mother gave Father a week's notice of her impending marriage and informed him of her intent to relocate only after confronted by Father.

[8] After Mother and D.B. married and Father learned of her intent to move with Child to Fort Wayne, Father conducted an internet search of D.B.'s address

and learned that D.B. was a registered sex offender. Father confronted Mother with the information and informed her that he was terminating her physical custody until he could find out more about D.B. and the circumstances surrounding his conviction. Father told Mother that he would permit her to have visitation with Child so long as he or his mother were present to ensure that Mother would not have Child around D.B. Father offered Mother parenting time on several occasions, subject to his requested accommodations to prevent D.B. from being around Child, but Mother refused, believing that Child would not understand the circumstances.

[9] On July 27, 2016, Father filed a Motion for Modification of Child Custody asserting that there had been a substantial change in circumstances such that a modification of the joint child custody order was in the best interests of Child. Specifically, Father stated that "it ha[d] come to [his] attention that Mother recently married [D.B.], who was convicted of child molesting . . . and is a registered sex offender," and that he had "grave concerns about the safety of [Child] if [Child] is permitted to be around [D.B.]" *Id.* at 33, 34. On August 25, 2016, Mother filed a Verified Application for Order to Show Cause, For Finding of Contempt, and For Enforcement of Custody Order based on Father's refusal to allow Child to be in her care unless she agreed to his terms.

[10] The trial court held a hearing on the parties' motions on August 29, 2016. Father testified and requested that he be awarded sole custody of Child and that Mother have restricted visitation. Father admitted to the court that at the time of the hearing he was serving home detention for a conviction related to his

possession of marijuana and paraphernalia. Mother, D.B., D.B.'s probation officer, and D.B.'s mental health counselor testified at the hearing. D.B.'s mental health counselor summarized his interactions with D.B., explained that the results of various assessments in which D.B. participated indicated that D.B. was not a danger to Child, and testified that he had formed a similar opinion. At the conclusion of the hearing, the trial court took the matter under advisement.

[11] On September 21, 2016, the trial court entered its order granting Father sole custody and providing Mother with restricted parenting time.[3] Specifically, the court ordered that Mother was to have parenting time on alternate weekends and scheduled holidays for ten hours per day. The trial court found that overnight visitation with Mother was not appropriate and specified that Child was to be returned at least one hour before bedtime. The trial court also determined that Mother was to have no mid-week visitation on account of Child's age and "the distance created between the parties by [M]other." *Id*. at 22. The trial court incorporated the safety plan[4] devised by D.B.'s counselor

---

[3] In its order, the trial court also denied Mother's motion in all respects. Mother does not challenge the trial court's order in this regard.

[4] The safety plan required Mother to ensure that Child was never left alone with D.B.; that D.B. not be permitted to engage in any type of horseplay, tickling, wrestling, touching, hugging, or kissing with Child; that D.B. not be permitted to whisper or engage in private conversations with Child; that D.B. not be permitted to use any bathroom facility if Child is also in the facility; and that Mother ensure that Child is properly dressed during her parenting time.

and ordered Mother to follow such plan during her parenting time with Child. Mother appeals this order.

## Discussion & Decision

[12] We initially observe that Father has not filed an appellate brief. Accordingly, we will not undertake the burden of developing arguments for Father. *See Maser v. Hicks*, 809 N.E.2d 429, 432 (Ind. Ct. App. 2004). When an appellee does not file a brief, we apply a less stringent standard of review and may reverse when the appellant establishes prima facie error. *Id.* "'Prima facie' is defined as 'at first sight, on first appearance, or on the face of it.'" *Id.* (quoting *Parkhurst v. Van Winkle*, 786 N.E.2d 1159, 1160 (Ind. Ct. App. 2003)).

[13] Mother argues that the trial court abused its discretion in modifying custody. Our standard of review in such cases is well settled:

> When reviewing a custody determination, we afford the trial court considerable deference as it is the trial court that observes the parties' conduct and demeanor and hears their testimonies. *Kondamuri v. Kondamuri*, 852 N.E.2d 939, 945-46 (Ind. Ct. App. 2006). We review custody modifications for an abuse of discretion "with a preference for granting latitude and deference to our trial judges in family law matters." *Werner v. Werner*, 946 N.E.2d 1233, 1244 (Ind. Ct. App. 2011) (quoting *K.I. ex rel. J.I. v. J.H.*, 903 N.E.2d 453, 457 (Ind. 2009)), *trans. denied*. We will not reweigh the evidence or judge the credibility of witnesses. *Kondamuri*, 852 N.E.2d at 946. Rather, we will reverse the trial court's custody determination based only upon a trial court's abuse of discretion that is "clearly against the logic and effect of the facts and circumstances or the reasonable inferences drawn therefrom." *Id.* "[I]t is not enough that the evidence might

support some other conclusion, but it must positively require the conclusion contended for by the appellant before there is a basis for reversal." *Kirk v. Kirk*, 770 N.E.2d 304, 307 (Ind. 2002) (quoting *Brickley v. Brickley*, 247 Ind. 201, 210 N.E.2d 850, 852 (1965)).

*In re Paternity of C.S.*, 964 N.E.2d 879, 883 (Ind. Ct. App. 2012), *trans. denied*.

[14] Following the establishment of paternity, a trial court may modify a child custody order only upon a showing that modification is in the child's best interests and that there has been a substantial change in one or more of the factors that the court may consider under I.C. § 31-14-13-2. I.C. § 31-14-13-6.[5] I.C. § 31-14-13-2 provides that the court "shall consider all relevant factors," including specifically:

(1) The age and sex of the child.

(2) The wishes of the child's parents.

(3) The wishes of the child, with more consideration given to the child's wishes if the child is at least fourteen (14) years of age.

(4) The interaction and interrelationship of the child with:

---

[5] Mother and the trial court cite to Indiana Code §§ 31-17-2-21 and 31-17-2-8, - 15, which are applicable to determining the modification of custody in a dissolution proceeding. When determining the modification of custody in a paternity proceeding, as we have in this appeal, I.C. §§ 31-14-13-6 and 31-14-13-2 are applicable. Nevertheless, the paternity and dissolution statutes contain nearly identical language and now involve the same standard of review. *See Joe v. Lebow*, 670 N.E.2d 9, 16-20 (Ind. Ct. App. 1996) (discussing the history of the dissolution and paternity custody modification statutes).

(A) the child's parents;

(B) the child's siblings; and

(C) any other person who may significantly affect the child's best interest.

(5) The child's adjustment to home, school, and community.

(6) The mental and physical health of all individuals involved.

(7) Evidence of a pattern of domestic or family violence by either parent.

(8) Evidence that the child has been cared for by a de facto custodian, and if the evidence is sufficient, the court shall consider the factors described in section 2.5(b) of this chapter.

The party seeking modification of an existing custody order bears the burden of demonstrating that the existing custody order should be altered. *Kirk v. Kirk*, 770 N.E.2d 304, 307 (Ind. 2002).

[15] Here, the court concluded that there had been a substantial change "in Father's wishes;" "the interaction and interrelationship of [Child] with Mother on account of her decision to marry [D.B.];" and in [Child's] adjustment to the [Child's] home and community on account of Mother's decision to move to Fort Wayne with [D.B.]" *Appellant's Appendix Vol. 2* at 22. The trial court expressed concern about Mother's failure to communicate with Father concerning important matters such as her impending marriage, intent to move,

and D.B.'s criminal past. Implicit in the trial court's findings is that the trial court found that custody modification was in Child's bests interests. The trial court's findings adequately support its decision to modify the joint custody order and award Father sole custody of Child. The trial court did not abuse its discretion in this regard.

[16] Aside from the decision to modify custody, Mother argues that the trial court abused its discretion in restricting her parenting time without first determining that parenting time might endanger Child's health and well-being or impair his emotional development.[6] I.C. § 31-14-14-1, which outlines the parenting time rights of a noncustodial parent in a paternity action, provides that "[a] noncustodial parent is entitled to reasonable parenting time rights unless the court finds, after a hearing, that parenting time might: (1) endanger the child's physical health and well-being; or (2) significantly impair the child's emotional development." "Even though I.C. § 31-14-14-1 uses the term 'might,' this court interprets the statute to mean that a court may not restrict visitation unless that visitation would endanger the child's physical health or well-being or significantly impair the child's emotional development." *Walker v. Nelson*, 911 N.E.2d 124, 130 (Ind. Ct. App. 2009) (quoting *Farrell v. Littell*, 790 N.E.2d 612, 616 (Ind. Ct. App. 2003)). "By 'its plain language,' Indiana Code section 31-14-14-1 requires a court to make a specific finding 'of physical endangerment or

---

[6] In making this argument, Mother cites to Ind. Code § 31-1-11.5-24, which was repealed in 1997. The corollary to this statute applicable in this paternity action is found in Ind. Code § 31-14-14-1.

emotional impairment prior to placing a restriction on the noncustodial parent's visitation.'" *Farrell*, 790 N.E.2d at 616 (quoting *In re Paternity of V.A.M.C.*, 768 N.E.2d 990, 1001 (Ind. Ct. App. 2002), *reh'g granted on other grounds*).

[17] Here, the trial court restricted Mother's parenting time, but did not make a specific finding that visitation would endanger Child's physical health or well-being or significantly impair Child's emotional development. Mother has established prima facie error in this regard. Accordingly, we remand to the trial court with instructions to make findings to support the parenting time restrictions or enter an order without said restrictions. *See Walker*, 911 N.E.2d at 130 (remanding with instructions to trial court to enter an order with findings sufficient to support a restriction on visitation or to enter an order that did not contain a visitation restriction).

[18] Judgment affirmed in part, reversed in part, and remanded with instructions.

Kirsch, J. and Mathias, J., concur.